Jorge V. Domínguez, Francisco Soto Gras, Antonia Q. Vda. de Quiñones, José Ramón Quiñones, Segismundo Quiñones, Juana Manuela Rodríguez de Willoughby, Palmira McCormick de Schuck, Dionisio Trigo, Alvaro Trigo, María Rafaela Chloris McCormick y Murdock de McKinlay y Jaime Zubiaurre, demandantes-apelantes-apelados, *v.* Rafael Fabián y Fabián, demandado-apelado-apelante.

No. 4287.—*Visto:* Junio 16, 1927.  *Resuelto:* Febrero 6, 1928.

Apelación y Error—Resolución y Disposición del Caso—Decisiones en General—Corte Igualmente Dividida en la Opinión.—Cuando los Jueces del Tribunal Supremo están igualmente divididos en opinión la sentencia de la corte inferior debe confirmarse.

Sentencia de *Pablo Berga,* J. (San Juan), aprobando memorándum de costas. *Confirmada.*

*Henry G. Molina,* abogado del apelante; *Jorge B. Domínguez* y *F. Soto Gras,* abogados de los apelados.

Por la Corte.

### SENTENCIA

Por cuanto, los cuatro miembros del tribunal que inter-

vienen en la decisión de este caso están conformes en que la corte inferior no cometió error, bien como alega el demandado y apelante o como sostienen los demandantes y apelantes en los primeros ocho señalamientos de error, y

POR CUANTO también están conformes todos los dichos miembros en que los honorarios concedidos por la corte de distrito no exceden del valor razonable de los mismos, pero no lo están en cuanto a que el grado de temeridad de los demandantes justifique el pago de dicha suma, estimando los Jueces Asociados Sres. Wolf y Aldrey, por los motivos que consignan en sus opiniones emitidas separadamente, que la suma es justa, criterio que prevalece por existir empate en esta Corte Suprema y ser el mismo del juez sentenciador, y los Jueces Presidente del Toro y Asociado Sr. Hutchison, por los motivos consignados en la opinión emitida por el último con la cual está conforme el primero, que deben fijarse los honorarios en una suma menor:

POR TANTO, se confirma la sentencia apelada que dictó la Corte de Distrito de San Juan con fecha 26 de abril de 1927 en el caso arriba expresado.

Así lo pronunció y manda el Tribunal y firma el Sr. Juez Presidente, haciéndose constar que el Juez Asociado Sr. Texidor no intervino.

OPINIÓN EMITIDA POR EL JUEZ ASOCIADO SR. HUTCHISON, CON LA CUAL ESTÁ CONFORME EL JUEZ PRESIDENTE SR. DEL TORO.

Ambas partes apelan de una resolución denegando en parte, modificando en parte y aprobándolo así modificado, un memorándum de costas. La historia del caso con anterioridad al memorándum puede hallarse en 36 D.P.R. 32.

El señalamiento de errores en el alegato del demandado-apelante especifica que la corte inferior erró:

"Primero, en fijar los honorarios de abogado por servicios ante la Corte de Distrito en solamente $1,500.00 en vez de la suma de $5,000.00 solicitada por el demandado."

La prueba aducida durante el juicio tiende a demostrar

que los servicios prestados en la corte de distrito valían razonablemente la cantidad de $5,000. Se ha demostrado que el demandado ya ha pagado a cuenta la cantidad de $4,500, estando pendiente un borderó final hasta tanto se resuelva la presente apelación. Puede admitirse para los fines de esta opinión que el valor estimado de los servicios así prestados, tal como fué fijado por los testigos del demandado, se aproxima de modo justo y razonable a una cantidad que sería suficiente para compensar a los letrados ·por el grado de habilidad envuelto y por el tiempo y la labor invertidos en prepararse para el juicio, así como en llevar el caso del demandado en corte abierta.

Debe admitirse, además, que la corte inferior puso en duda seriamente la corrección de la conclusión a que llegaron los abogados que ocuparon la silla testifical para declarar en cuanto al valor razonable de los servicios prestados por los abogados del demandado, y asimismo, que la idea que predominó en la mente del juez de distrito al reducir la partida de honorarios de abogado parece haber sido la de que la cantidad reclamada por los letrados del demandado y fijada por los testigos en la vista como el valor razonable de tales servicios, era en realidad de verdad excesiva desde el punto de vista de una compensación adecuada o de un valor razonable. Pero es igualmente claro que la corte inferior también basó su actuación, por lo menos parcialmente, en el caso de *Fragoso* v. *Marxuach,* 32 D.P.R. 690, citado con aprobación en el de *Castro* v. *Societé Anonyme des Sucreries de Saint Jean,* 34 D.P.R. 575, al efecto de que:

"Consagra la ley el derecho a percibir honorarios. La cuantía queda a discreción de la corte. Esa discreción es amplísima, pues la corte no viene obligada a fijar lo que realmente haya pagado por honorarios la parte victoriosa, sino la cantidad que representa el valor de los servicios y no toda la cantidad en casos en que así las circunstancias que concurren lo demandan, sino una parte de ella."

Los demandantes, como accionistas de la Central Boca

Chica, entablaron la presente acción por daños y perjuicios que alegaron haberles sido irrogados por los actos fraudulentos, la conducta y las falsas representaciones del demandado en su carácter fiduciario como director de la referida corporación, como vicepresidente de la misma, como presidente del Banco Territorial y Agrícola (uno de los principales acreedores de la central insolvente), como un alegado accionista y organizador de la Andrés Sugar Company (una corporación recientemente organizada que adquirió los bienes y el activo de la Central Boca Chica en la venta de ejecución), y como presidente de la Porto Rico Sugar Developing Co., que era la que suministraba la refacción agrícola necesaria para la operación continua por la Andrés Sugar Co. del ingenio o central. Tal como se desarrolló en el juicio, el caso se basó enteramente en prueba circunstancial, y la sentencia fué substancialmente, y para todos los fines prácticos,. un veredicto de "no probado" (*Scotch verdict*). En apelación, esta sentencia fué confirmada bajo la teoría de que' en tales casos la prueba debe ser fuerte, clara y convincente para justificar una conclusión afirmativa en cuanto a la existencia de fraude, aunque la aplicación así hecha de tal teoría está reforzada por un análisis independiente de la evidencia aducida en el juicio, en adición de un extracto copioso de la relación del caso y opinión emitida por el juez sentenciador.

Hasta ahora sólo hemos tratado de' los extremos principales de la sentencia o sea, en cuanto a la disposición del caso en sus méritos en la corte inferior en lo referente a la cuestión principal en controversia, y de los fundamentos que tuvo esta corte para estar de acuerdo con ese resultado. Desde luego, la cuestión de las costas, aunque relacionada íntimamente con las materias anteriormente mencionadas, envolvió otras consideraciones en la corte inferior, y la confirmación en apelación en cuanto a este extremo se basó entera y exclusivamente en la ausencia de un abuso

de discreción de parte del juez sentenciador que fuera suficiente para justificar una revocación.

El análisis de la prueba por el juez sentenciador, y el comentario sobre la misma hecho por esta corte, por voz del Juez Asociado Sr. Franco Soto al decidir la apelación anterior, indican de un modo general los motivos para adoptar un curso algo diferente al seguido en el caso de *Goffinet et al.* v. *Polanco et al.,* 32 D.P.R. 907,—en que los apelantes invocaron un *dictum* anterior de esta corte y, asimismo por voz del Juez Asociado Sr. Franco esta corte se negó a conceder un pronunciamiento de costas a favor de los demandados, concluyendo la discusión del caso con la siguiente manifestación:

"No podemos decir, por tanto, que los apelantes estaban desprovistos de alguna razón, aunque aparente y, si bien sus pretensiones fueron totalmente desestimadas, no puede sostenerse que la falta de buena fe o la temeridad les guiaba al presentar y sostener el presente pleito."

Si bien en el presente caso los apelantes no podían citar ningún *dictum* anterior de esta corte como una explicación más o menos plausible de su fe en el resultado final de su acción, sin embargo, los hechos que se desarrollaron durante el juicio revelan un caso dudoso. Si la corte inferior hubiese creído propio dictar sentencia sobre los méritos a favor del demandado, pero sin especial condena o adjudicación de costas, y al hacerlo así hubiera parafraseado el lenguaje de esta corte en el caso de *Goffinet* v. *Polanco, supra,* o hubiese citado ese caso como autoridad para tal proceder, entonces el demandado habría tenido poca o ninguna razón para quejarse. Bajo tales circunstancias, esta corte hubiera dicho, al negarse a alterar la conclusión a que se llegó, y con igual propiedad, substancialmente, *mutatis mutandis,* lo que se dijo en la apelación anterior al sostenerse la adjudicación que en realidad se hizo en este caso, como por ejemplo:

"El demandado se queja de la negativa a concederle costas. Los

demandantes insisten en que su acción pudo estar equivocada pero que no se debió a temeridad. La Corte inferior, sin embargo, ejerció su sana discreción al negarse a condenar en costas a los demandantes, y, tomando todo en consideración, no vemos motivo alguno para revocar la sentencia en este respecto.''

Los miembros de un tribunal de apelación pueden no estar de acuerdo entre sí en cuanto a si un demandado ha cumplido o no con los requisitos de la regla de que la prueba de fraude debe ser clara, fuerte y convincente. En las cortes de distrito los distintos matices de opinión a este respecto sólo serían limitados por el número de jueces de distrito. Si bien es bueno que los abogados en ejercicio consideren ambos lados de cada caso como materia de precaución ordinaria y de protección contra una sorpresa o contra una derrota posible, sin embargo, es difícilmente razonable exigir que los abogados se anticipen el resultado de un juicio, o que midan por adelantado el peso y suficiencia de la prueba circunstancial que ha de aducirse con el mismo grado de imparcialidad y corrección que el que se espera de un juez sentenciador, después de haberse sometido el caso. Si se interpretara nuestra disposición estatutoria para recobrar costas, incluyendo honorarios de abogado, como una advertencia a todos los demandantes de que una adjudicación de costas necesariamente incluye más del treinta por ciento del valor razonable de los servicios legales realmente prestados por el abogado del demandado, el incoar una acción basada en la teoría de fraude sería un experimento arriesgado.

Toda la argumentación en apoyo de la primera proposición sometida en el alegato del demandado-apelante se dirige a la cuestión del valor razonable, y pasa completamente por alto la disposición estatutoria de que: (bastardillas nuestras)

''En todos los casos en que *se hayan* concedido a una parte las costas en una acción o procedimiento en la corte de distrito, dicha parte, *a discreción de la corte de distrito*, tendrá derecho a recibir

de la parte vencida, una cantidad que represente el valor de los servicios de su abogado *o una parte de dicha cantidad; Disponiéndose,* que nada de lo contenido en esta Sección se entenderá que concede honorarios de abogado para ser incluídos en las costas que se impusieren a un demandado que no hubiere radicado su comparecencia en una acción o procedimiento; *Y disponiéndose, además,* que los honorarios y costas serán concedidos a discreción del juez que tenga conocimiento de la acción o procedimiento, *teniendo en cuenta también el grado de culpa* de la parte, si la hubiere, contra quien se dictare sentencia."

Las palabras que acabamos de citar han sido tomadas del artículo 327 del Código de Enjuiciamiento Civil, tal como fué enmendado en 1917. Ese artículo, según fué originalmente adoptado por nuestra Legislatura insular en 1904, leía como sigue:

"La cuantía y forma de pago de los honorarios de los abogados y consultores se deja al convenio expreso o tácito de las partes; pero las partes en pleitos o procedimientos tendrán derecho a las costas y a los desembolsos, según más adelante se dispone."

Los artículos 328 a 330, inclusive, disponían la concesión de costas como cuestión de derecho en ciertos casos enumerados. El artículo 331 disponía que:

"En los pleitos no mencionados en el artículo 328 pueden concederse las costas o no, y si se concedieren, pueden distribuirse proporcionalmente entre las partes, demandantes o demandadas, según el caso, a discreción de la Corte, pero no pueden concederse costas en un pleito para obtener dinero o el importe de daños y perjuicios, cuando el demandante reclama menos de cien dollars, ni en un pleito para obtener la posesión de propiedad personal cuando el valor de ésta fuere menos de cien dollars."

El artículo 339 autorizaba la radicación en secretaría de un memorándum jurado y permitía que la parte contraria, de no estar satisfecha con el mismo, solicitara dentro de tres días que se fijaran dichas costas por la corte o por el juez de ésta en su despacho.

El artículo 331 fué enmendado en 1905, eliminándose

las limitaciones que seguían al punto y coma que había en el texto original, *supra*.

En el 1908 los artículos 327 y 339 fueron enmendados en la siguiente forma:

"Artículo 327.—Las partes en pleito o procedimientos tendrán derecho a las costas y desembolsos que en ellos se les hayan irrogado, con sujeción a las reglas que más adelante se establecen. En todos los casos en que en un pleito o procedimiento se concedan las costas a una parte, si la materia litigiosa excede de quinientos dollars, tendrá ésta el derecho de que se le abone por la parte condenada el importe de los honorarios que haya devengado el abogado de la primera por sus servicios. *Disponiéndose,* que nada de lo contenido en esta Sección podrá entenderse en el sentido de permitir que los honorarios de abogados se incluyan en las costas impuestas contra un demandado que no hubiere comparecido en el pleito o procedimiento, y disponiéndose además que los honorarios y costas serán concedidos discrecionalmente por el Juez que entienda en el pleito o procedimiento, teniendo en cuenta el grado de culpabilidad, si la hubiere, de la parte condenada por la sentencia."

"Artículo 339.—Las costas se reclamarán por la parte a la que hayan sido concedidas, entregando al Secretario de la Corte, dentro de los diez días siguientes al en que se haya hecho firme la sentencia o decisión que haya puesto fin al asunto, un Memorándum de dichas costas, de los desembolsos necesarios hechos en el pleito por el reclamante y del montante de la minuta de honorarios de su letrado. La veracidad de ese Memorándum deberá ser jurada por la parte o su abogado.

"A la parte condenada al pago deberá servírsele una copia de dicho Memorándum por la que lo presente, pudiendo aquélla impugnar todas o cualquiera de sus partidas dentro de los diez días siguientes al en que se le haya entregado su copia. En caso de impugnación, la parte contraria, dentro de los cinco días siguientes al en que se le haya entregado la copia de aquélla, podrá contestarla. La corte señalará día para la vista del asunto y celebrada ésta, practicándose en el acto las pruebas pertinentes que las partes propongan, dictará su resolución.

"Si se hubiesen impugnado los honorarios de un abogado por excesivos, la Corte, al resolver la impugnación si la declara con lugar fijará la ascendencia de aquellos que deben ser pagados.

"Contra las resoluciones de la Corte resolviendo impugnaciones

hechas a un memorándum de costas se podrá apelar por la parte o por su abogado.

"Cuando no se hubiese impugnado en tiempo un Memorándum de costas o, cuando hecha la impugnación el tribunal hubiere dictado resolución definitiva en el asunto, y no se hubiere interpuesto recurso contra la misma o en caso de haberse interpuesto, se dictare sentencia definitiva de acuerdo con la resolución de dicho recurso, deberá la parte condenada al pago consignar su montante en la Secretaría de dicha Corte dentro de los cinco días siguientes a la notificación que por el Secretario se le haga con tal fin. Si así no lo hiciese se librará orden de ejecución en la misma forma que para la de una sentencia. *Disponiéndose,* que nada de lo contenido en esta Sección podrá entenderse en el sentido de permitir que los honorarios de abogados se incluyan en las costas impuestas contra un demandado que no hubiere comparecido en el pleito o procedimiento."

En el 1917 el artículo 327 fué nuevamente enmendado, incluyéndose el Pueblo de Puerto Rico entre "las partes en pleitos o procedimientos" mencionados en la primera oración, siendo enmendados además según se indica en el texto primeramente citado arriba.

En el mismo año, el artículo 339 fué enmendado en el sentido de exigir la entrega de un memorándum de costas "dentro de los diez días siguientes al en que se haya recibido en la corte sentenciadora en primera instancia aviso oficial de la resolución dictada en apelación en última instancia."

El fin claro del artículo 327, tal como fué adoptado en el 1904, era excluir expresamente los honorarios de abogado de las costas y desembolsos a que tenían derecho las partes en un pleito o procedimiento. No trata de disponer la concesión de costas como cuestión de derecho ni a conferirle a la corte discreción alguna a este respecto. En lo que se refiere a estas cuestiones, el artículo 327 era meramente una introducción a los artículos 328 al 331, inclusive, que contenían y abarcaban toda la materia indicada por la frase "que más adelante se prescriben." Cualquier discreción que en la materia de concesión de costas le fuera conferida a las cortes de distrito por el Código de Enjui-

ciamiento Civil tal como fué adoptado en el 1904, ha de hallarse en el artículo 331 de ese código, y sólo en ese artículo.

Puede admitirse que la disposición final del artículo 327, según fué enmendado en el 1908 y como lee hoy día, se refiere al tiempo de dictarse sentencia así como al tiempo de considerarse un memorándum de costas. Así interpretado equivaldría a lo sumo a una mera paráfrasis del artículo 331 o, de otro modo, a una indicación más específica de la manera en que ha de ejercerse la discreción conferídale al juez sentenciador por ese artículo. Pero la parte precedente del artículo 327, por lo menos según fué enmendada en el 1917, no está sujeta a tal interpretación.

La primera disposición de ese artículo tal como fué enmendado en 1908 y como lee ahora, es una copia <i>verbatim</i> de la disposición final del artículo 339, según fué enmendado en dos ocasiones en los años últimamente mencionados. Las palabras <i>"costs taxed against a defendant"</i> de la versión inglesa leen en el texto castellano "costas impuestas contra un demandado" en el artículo 327, tal como fué enmendado en 1908 y en ambas enmiendas del artículo 339. La variación en la versión castellana del artículo 327, según fué enmendado en 1917, en que se dice "costas que se impusieren," es insignificante. Por otra parte, las palabras del artículo 327, tal como fué enmendado en inglés, <i>"where costs have been allowed,"</i> que en el 1908 aparecían en castellano "en que en un pleito o procedimiento se concedan las costas," llegan a ser el exacto equivalente del lenguaje usado en la versión castellana del 1917, que parece haber sido enmendada para conformarla al texto inglés y ahora lee como sigue: "en que se hayan concedido a una parte las costas."

"Si bien la concesión de costas es un acto de la corte, la obligación de fijar las mismas no recae por lo regular en primera instancia en ninguna corte de récord, las cuales por regla general no tienen autoridad para fijarlas. En casi todas las jurisdicciones el secretario de la corte ante la cual pende la acción fija las costas, aun-

que a veces se confiere autoridad para fijarlas a otros funcionarios, o aún a la corte misma con respecto a determinadas partidas.'' 15 C. J. 176, párrafo 426.

La disposición final del artículo 339, interpretada en relación con el contexto inmediato, claramente quiere decir que no se incluirán los honorarios de abogado en un memorándum radicado después de dictarse sentencia de costas, en tanto en cuanto se refiere a un demandado que no ha comparecido en la acción o procedimiento. El lenguaje de la primera disposición del artículo 327 no sólo es idéntico al usado en la disposición final del artículo 339, sino que, por lo menos en lo referente al texto inglés, es demasiado claro para admitir interpretación. La fraseología de la versión castellana, si no se refiere en términos inequívocos a la inclusión de los honorarios de abogado en una reclamación de costas ya concedidas, está, para decir lo menos, sujeta a tal interpretación. Además debe ser interpretada conjuntamente con la manifestación inmediatamente precedente, la cual es perfectamente clara y a la que se ha unido como una disposición la cláusula que estamos considerando. Pero, aún de otro modo, el hecho de que tanto la primera como la segunda disposición del artículo 327 pudieran ser interpretadas como referentes al tiempo de la concesión como al de la fijación de las costas, no podría surtir efecto en forma alguna contra la interpretación que aquí se le da a la frase ''en todos los casos en que se hayan concedido a una parte las costas en una acción'' (*in all cases where costs have been allowed to one party in an action*). Decir que la cláusula inicial del artículo 327 no prevé una concesión anterior de costas es pasar por alto las palabras ''se hayan concedido.'' Resolver que la disposición primera y fundamental de dicha sección no permite a un demandante victorioso incluir en su memorándum de costas ya concedido una suma que represente el valor razonable de los servicios legales prestados por su abogado, o parte del valor de los mismos, y hacerse que los mismos se fijen como parte

de tales costas, sería enmendar la ley mediante legislación judicial, eliminar del precepto estatutorio las palabras "se hayan concedido," y substituirlas por la frase "se concedan."

De otra parte del alegato del demandado-apelante tomamos la siguiente cita:

"No estamos en libertad de interpretar ningún estatuto en el sentido de negarle efecto a parte alguna de su contexto. Es una regla fundamental de hermenéutica que se le debe otorgar a cada palabra significado y efecto, si ello fuere posible. Aún allá para la época de Bacon's Abridgement, se dijo en su segunda sección que 'un estatuto debía, en conjunto, ser interpretado de tal modo que, de poderse evitar, ninguna cláusula, oración o palabra fuera superflua, nula o insignificante.' Esta regla ha sido repetida en innumerables ocasiones. Otra regla igualmente reconocida es que debe interpretarse cada parte de un estatuto en conexión con el todo, para así armonizar todas las partes, si posible fuere, y darle significado a cada una." *Washington M. Co.* vs. *Hoffman*, 101 U. S. 112.

Desde el 1908 al 1917 podría haberse argüido con algún grado de plausibilidad que la corte sentenciadora había agotado su discreción al hacer la concesión al tiempo de dictar sentencia y que después de eso nada quedaba por hacer ni podía hacerse excepto la determinación de la cantidad o valor razonable de los honorarios de abogado ya incluidos en tal concesión anterior. Pero en el año últimamente mencionado la Legislatura parece haber cerrado la puerta a futuras disputas acerca de este punto. Si hizo esto con el fin de disipar cualquier duda que pudo haber surgido sobre el significado y límite exactos de la ley según fué enmendada en 1908, o si se proponía agregar un elemento enteramente nuevo al artículo 327 tal como había sido enmendado anteriormente, es completamente impertinente. El rasgo saliente e inequívoco de la enmienda de 1917 es que la corte de distrito no queda limitada a la determinación del valor razonable de los servicios legales prestados, sino que, en ejercicio de una sana discreción,

puede conceder cualquier parte o porción de una cantidad
que represente tal valor razonable, y que la discreción que
así expresamente se le confiere a la corte debe ser ejercida
''en todos los casos en que *se hayan concedido* a una parte
las costas en una acción o procedimiento,'' tal como lo in-
dica fuera de toda cavilación la enmienda deliberada de
la versión castellana del contexto que se acaba de citar
para conformarlo a la versión inglesa.

Interpretando la ley según fué enmendada en el 1917,
esta corte, en el caso de *Ramírez* v. *American Railroad Co.,*
28 D.P.R. 181, se vió obligada a decir que:

''Una vez concedidas las costas en la sentencia sin excluirse los
honorarios, la corte de distrito, de acuerdo con las prescripciones
del artículo 327, aún tiene discreción respecto a la cuantía de los
honorarios que han de concederse a la parte victoriosa que repre-
sente el valor total de los servicios prestados por su abogado o una
parte de esa suma.''

Y, en el caso de *Castro* v. *Societé Anonyme des Sucreries
de Saint Jean, supra,* la mayoría de este Tribunal, por voz
del Juez Presidente Sr. del Toro, elabora más ampliamente
el mismo pensamiento, así:

''Hay dos momentos en que la corte sentenciadora ejercita su dis-
creción, a saber: 1, cuando dicta su sentencia, y 2, cuando aprueba
el *memorándum:* para imponer o no las costas en el primero con o
sin honorarios: para graduar su cuantía en el segundo; debiendo
llamarse poderosamente la atención hacia el hecho de que la ley fa-
culta a la corte para condenar al pago de todo el valor de los ser-
vicios del abogado de la parte victoriosa o de una parte de dicho
valor, de acuerdo, como es natural, con las circunstancias que en
cada caso concurran.

''La temeridad de la parte vencida es una de esas circunstancias.
Cuando la corte condena por su sentencia al pago de las costas, es
porque estima que la parte vencida actuó temerariamente. La te-
meridad tiene varios grados. Al dictar su sentencia, apreciando
el grado de temeridad de la parte vencida, puede la Corte conde-
narla al pago de las costas excluyendo de ellas los honorarios de
abogado o puede simplemente condenarla en costas, condena que
lleva consigo la de honorarios de abogado, teniendo luego la opor-

tunidad dicha corte de considerar de nuevo la mayor o menor temeridad de la parte vencida a los efectos de graduar la cuantía de los honorarios.

"Otras muchas circunstancias pueden tenerse en cuenta por la corte para fijar la cuantía. Véase el caso de *Bertrán* vs. *Carrasquillo,* 29 D.P.R. 559, donde se transcribe jurisprudencia sobre la materia resumida por *Corpus Juris.*"

Véase además el caso de *López Ramírez* v. *Benítez, Comisionado,* 34 D.P.R. 592, en que estaban en controversia unos ocho o diez mil dólares, las cuestiones legales levantadas eran más o menos nuevas, difíciles y complicadas, y se admitió que la suma de mil dólares reclamada por el demandado, y rebajada a $800 por la corte de distrito era un cálculo muy razonable del valor de los servicios prestados por los abogados del demandado, y en el cual, en vista de estos hechos, esta corte resolvió que una rebaja adicional de $300 y una concesión de la cantidad restante, o sea, aproximadamente la mitad del valor de los servicios realmente prestados, estaba más en armonía con el tipo doble y método elástico de medida prescritos por el estatuto que está bajo nuestra consideración.

Una aplicación justa, equitativa e inteligente de esta regla estatutoria, a la luz de su espíritu y fin envuelve la reserva de un margen razonable para la imposición de una pena mayor en casos extremados en los cuales hay una demanda más seria para algo más disuasivo. Si pudiéramos ser consistentes y siempre pudiésemos distinguir sin dificultad entre los casos de acuerdo con las circunstancias, entonces el máximum prescrito por el estatuto como la pena que ha de imponérsele a un litigante poco escrupuloso debe tenerse en reserva para el demandante que instituye una acción con el único fin de acosar a un demandado inocente o bajo la teoría de que tal demandado estaría dispuesto a desprenderse de una suma de dinero considerable para evitar la notoriedad poco agradable que sobreviene en un juicio sobre los méritos de cargos sensacionales imputándole

la comisión de actos fraudulentos, no obstante el carácter infundado y grosero de tal acusación.  En el presente caso no tenemos motivo alguno para dudar de la perfecta buena fe de los abogados de los demandantes y no estamos preparados para decir que al tiempo de entablar el pleito ellos no tuvieran motivos fundados para esperar un resultado más favorable.

Según hemos indicado al principio, no necesitamos poner en duda lo razonable de la valoración hecha por los compañeros de profesión de los abogados del demandado sobre los servicios prestados en la corte de distrito.  No obstante, la proposición de que tales servicios valían razonablemente la cantidad de $5,000 necesariamente envuelve como corolario la admisión adicional de que los letrados del demandado realizaron algo más que una tarea perfunctoria al prepararse para juicio, al estar presentes durante varios días en la sala de la corte y al llamar la atención del juez sentenciador hacia el hecho de que la prueba aducida por los demandantes no demostraba de modo concluyente ninguna participación activa o deshonesta de parte del demandado en la alegada conspiración para defraudar a los demandantes.  Los abogados del demandado no pueden aseverar consistentemente que la cantidad de $5,000 constituye un cálculo conservador del valor razonable de los servicios legales realmente prestados, y al mismo tiempo insistir en la ausencia completa de una base racional de hecho o de derecho para entablar el pleito original.

Durante la vista sobre el memorándum de costas, el abogado del demandado declaró que había invertido un tiempo considerable en examinar la demanda, conferenciar con el demandado, con Martínez Domínguez y otras personas, en preparar una moción solicitando la eliminación de ciertas alegaciones de la demanda, una moción de traslado y una excepción previa con un alegato en apoyo de la misma; que el juicio se prolongó por más de cuatro días; que después de eso se argumentó y sometió cierta moción; que al

recibir el alegato de los demandantes fué necesario hacer un examen extenso de la prueba documental aducida por los demandantes durante el juicio para poder preparar el alegato del demandado, el cual fué sometido posteriormente y consistía de treinta y dos páginas.

Uno de los testigos del demandado calculó el valor de los servicios prestados en conexión con las alegaciones preliminares y dilatorias, así como en la preparación para el juicio, incluyendo las consultas con el demandado y con otras personas y la radicación de una contestación, en $2,000 ó $1,500, y fijó el valor razonable de los servicios prestados durante el juicio y antes de que se dictara sentencia en $3,000.

Mientras declaraba, el abogado del demandado manifestó espontáneamente que los servicios prestados en relación con la moción de traslado no fueron incluidos en la partida de $5,000 por el motivo de que dicha moción había sido declarada sin lugar. Del mismo modo, el valor razonable de los servicios prestados al preparar la moción para eliminar, la excepción previa y el alegato en apoyo de la misma, parecería depender, por lo menos hasta cierto punto, de la existencia en aquel tiempo de una posibilidad razonable de que los demandantes pudieran probar los hechos alegados en su demanda, acompañada de una perspectiva más o menos razonable de que en tal caso una sentencia sobre los méritos a favor de los demandantes sería revocada por falta de hechos suficientes para determinar una causa de acción.

La corte inferior resolvió expresamente que la única cuestión envuelta, según se indica en la opinión de este tribunal en la apelación anterior, era una cuestión de hecho, a saber, si el demandado había o no participado en forma alguna en los actos y transacciones imputádosle en la demanda, o si, en otras palabras, la prueba practicada había establecido o no los actos fraudulentos o las omisiones en el cumplimiento de su deber por los cuales los demandantes

trataban de hacer responsable al demandado. El juez sentenciador llegó a la conclusión de que, tomando en consideración todas las circunstancias del caso, la cantidad de $1,500 era una compensación justa y razonable por los servicios que en realidad prestaron en la corte de distrito los abogados del demandado. Y, enfocando la cuestión desde el punto de vista del valor razonable solamente, por lo menos uno de los miembros de esta corte no está dispuesto a alterar ese resultado.

En verdad, no se necesitaba agotar las autoridades para satisfacer a la corte inferior en cuanto a la existencia en esta jurisdicción de la doctrina de que la prueba de fraude debe ser clara, fuerte y convincente. Una breve conferencia con el demandante y con sus socios y alegados co-conspiradores debió haber sido suficiente para indicar de modo general la naturaleza y alcance de la prueba circunstancial de que podían disponer los demandantes, y no hay indicación alguna de que el demandado fuera en realidad sorprendido en el juicio. Si asumimos con los abogados del demandado que el verdadero resultado en la corte inferior fué inevitable y evidente desde el principio, y si resolvemos a favor del demandado toda presunción de inocencia, honradez ordinaria, buena fe y proceder correcto en sus relaciones comerciales, entonces parecería tener gran peso la contención de los abogados de los demandantes, al efecto de que bajo cualquier hipótesis de esa naturaleza el demandado tendría derecho, a lo sumo, a una cantidad meramente nominal que represente el valor razonable de los servicios legales que en verdad prestó su abogado.

Pero, sea ello como fuere no nos concierne tanto la cuestión del valor razonable como el hecho de que la corte inferior le atribuyó demasiada importancia a ese aspecto del caso y no le prestó la debida consideración a la cuestión de culpa o falta de motivo razonable para la acción entablada por los demandantes, como un factor primordial de la situación.

Según indica el Juez Franco en su opinión disidente en el caso de *Castro* v. *Societé Anonyme des Sucreries, supra,* nuestra Legislatura insular, al adoptar el grado de culpa o temeridad que se le puede atribuir · a una parte como la medida de su responsabilidad en la materia de costas, incluyendo los honorarios de abogado, ha restablecido en substancia y espíritu la regla prescrita por la Ley 8ª, tít. 22, Partida 3ª. La única diferencia de criterio entre los miembros de este tribunal fué y es en cuanto a cómo y cuándo esta regla ha de aplicarse bajo nuestro estatuto, tal como lee en la actualidad. Pero si la discreción de la corte quedara agotada al tiempo de la concesión al determinar el grado de imprudencia o temeridad envuelto en un caso particular, o si, según se ha resuelto hasta ahora por una mayoría de esta corte, la discreción así ejercida fuera una discreción continua, el elemento de culpa es siempre la consideración dominante que determina la responsabilidad de una parte.

Puede admitirse para los fines de la argumentación que una concesión de costas incluyendo honorarios de abogado necesariamente envuelve algo más que una cantidad meramente nominal. Aún así, una concesión del diez o el quince por ciento del valor razonable de los servicios legales realmente prestados parecería ser suficientemente severa, desde el punto de vista de una medida meramente punitiva, en casi todos los casos en que la exclusión de los honorarios de abogado de la concesión de costas no hubiese equivalido a un abuso de discreción. Ni tenemos razón alguna para asumir que se exige una pena más fuerte como una medida profiláctica.

Basta advertir a los demandantes en perspectiva y potencialmente imprudentes que, no obstante la honradez de sus designios y su fe más o menos justificable en la rectitud de su causa, el dejar de satisfacer al juez sentenciador por medio de una prueba de fraude clara, fuerte y convincente puede traer consigo el pago de un pequeño por ciento del

valor razonable de los servicios prestados por los aboga-
dos del demandado.  No hay prueba de la intención legisla-
tiva en el sentido de incitar la imposición a un demandante
que ha perdido un caso dudoso, de una pena desproporcio-
nada, bien como compensación al demandado en tal caso, o
como un método estatutorio para proteger a los demanda-
dos en perspectiva de la posibilidad de verse envueltos en lo
futuro en una controversia igualmente dudosa.  Por tanto,
aplicando la escala de corredera del estatuto a los hechos
del presente caso, estamos convencidos de que la corte in-
ferior fué completamente muy liberal al conceder el treinta
por ciento del valor real de los servicios legales prestados
por los abogados del demandado como la proporción de tal
valor razonable que debe pesar sobre los hombros de los
demandantes y ser pagado por ellos como parte de las cos-
tas impuestas por los términos de la concesión original.

El demandado-apelante también insiste en que la corte
inferior erró:

"Segundo: En haber excluído en su totalidad la suma de
$1,000.00 por honorarios de abogado en relación con la apelación
para ante este Tribunal de la sentencia original dictada por la Corte
de Distrito."

Se hace mucho hincapié sobre este punto en el alegato,
y los abogados de los demandantes-apelantes comparten el
criterio que de la ley sostiene aquí a los abogados del de-
mandado-apelante.  Basta decir por ahora que la decisión
de esta corte en la apelación anterior de la sentencia origi-
nal de este caso no contenía pronunciamiento alguno res-
pecto a las costas de tal apelación.  La corte de distrito
no tenía autoridad, al tiempo de considerar el memorándum
de costas, para modificar o enmendar la sentencia de este
tribunal o para suplir ninguna omisión en la misma, bien
fuera tal omisión hecha por inadvertencia o por algún otro
motivo, concediendo honorarios de abogado por servicios le-
gales prestados en la apelación anterior.

El primer señalamiento de error de parte de los deman-

dantes-apelantes es que la corte inferior cometió error al conceder una cantidad para honorarios de abogado cuando la sentencia original no contenía adjudicación alguna al efecto.

Aquí se nos asegura por los abogados de los demandantes-apelantes que ésta es una cuestión que aún está sujeta a controversia entre los miembros del foro, no obstante las decisiones de este tribunal al efecto de que los honorarios de abogado están incluidos en la adjudicación de costas, a menos que se excluyan expresamente de la misma. Los abogados dicen que ellos han insistido hasta ahora por varias ocasiones, y continuarán insistiendo, en que la doctrina de estos casos es contraria a las disposiciones expresas del estatuto que exige no solamente una conclusión expresa en cuanto a la culpabilidad o "temeridad" de una parte, sino también una determinación del grado de culpa al hacerse el pronunciamiento de costas; que la conclusión últimamente mencionada está sostenida por el razonamiento de esta corte en el bien conocido caso de *"Veve v. Fajardo Sugar Developing Co.,"* y que los demandantes-apelantes, aunque quizás nada que valga la pena podrían añadir al razonamiento de la opinión en ese caso, no quieren perder esta oportunidad para indicar que nuestra última doctrina no ha recibido la aprobación profesional y no puede sostenerse bajo los principios de buena lógica y hermenéutica.

En ausencia de mención alguna en cuanto a página o tomo, presumimos que los demandantes-apelantes tuvieron la intención de citar el caso de *Veve v. Municipio de Fajardo,* 18 D.P.R. 764, resuelto en junio de 1912, en el cual se discutió e interpretó la ley según fué enmendada en 1908.

La enmienda de 1917 fué considerada cuidadosamente por esta corte en el caso de *Brac v. Ojeda,* 27 D.P.R. 658, y nuestra decisión en ese caso se basó enteramente en el estatuto según fué enmendado, y no según leía con anterioridad a tal enmienda y al tiempo de la opinión anterior en

el caso de *Veve* v. *Municipio de Fajardo, supra.* Ambos casos fueron reconsiderados en el de *Ramírez* v. *American Railroad Co.*, 28 D.P.R. 181, y, por los motivos allí consignados, nos determinamos definitivamente a seguir y adherirnos à la doctrina sentada en el caso de *Brac* v. *Ojeda.* Hemos tratado de exponer aquí algo más detalladamente algunas de las consideraciones en que se basó o pudo haberse basado la conclusión a que se llegó en el caso últimamente mencionado. Si los puntos de vista expuestos en los últimos casos son radicalmente incorrectos o manifiestamente erróneos, entonces, mientras más pronto se revoquen esos casos, más conveniente será para todas las partes interesadas, y se le dará la mejor bienvenida a cualquier luz adicional que se pudiera verter sobre la cuestión por cualquier abogado en ejercicio, o por cualquier grupo de abogados en ejercicio, bien como abogados del caso o como *amicus curiae,* durante la vista de una apelación de cualquier sentencia conteniendo un pronunciamiento de costas en términos generales y sin hacer mención de los honorarios de abogado.

El segundo motivo de apelación en que descansan los letrados de los demandantes-apelantes es que la corte inferior erró al resolver que el memorándum de costas fué presentado dentro del tiempo prescrito por la ley. Aquí la contención de los demandantes-apelantes es que el memorándum debe presentarse dentro de los diez días siguientes al en que una parte o su abogado ha sido notificada de la decisión de la apelación, y no dentro de los diez días de haberse recibido el mandato en la corte inferior, según lo dispone expresamente el artículo 339 del Código de Enjuiciamiento Civil, *supra.* No podemos estar de acuerdo con la interpretación que trata de dársele al estatuto.

La tercera proposición sometida por los demandantes-apelantes es que la corte inferior erró al resolver que no es necesario que la sentencia original determine el grado de culpa o temeridad. Los apelantes admiten que ésta es

substancialmente una modalidad de la segunda cuestión (*sic*) ya sometida, y el alegato nada contiene por vía de argumentación.

El cuarto y quinto señalamientos de error son al efecto de que la corte inferior erró al resolver que se había ejercido discreción al conceder las costas, aunque la sentencia guarda silencio en cuanto a los fundamentos de la corte para hacer tal concesión y para adjudicar honorarios de abogado, y que la corte inferior erró al resolver que no fué la intención del juez sentenciador no incluir honorarios en las costas o dejar en suspenso el ejercicio de su discreción para conceder honorarios hasta el momento de presentarse el memorándum de costas.

Aquí se critican los casos de *Castro* v. *Societé Anonyme des Sucreries*, y *López* v. *Benítez Comisionado, supra,* como una medida de conciliación a la cual recurrió esta corte para evadir las consecuencias de su actitud apartándose de la ley y de la norma razonable del·caso de *"Veve* v. *Fajardo."* Aquí también los abogados de los demandantes-apelantes aceptan cierto grado de responsabilidad por la doctrina de los casos últimamente mencionados, e indican el caso de *Guardiola* v. *La Compañía Azucarera del Toa,* 31 D.P.R. 635 como prueba de paternidad.

Es cierto que en el caso últimamente referido se interpuso una oposición al memorándum de costas en la corte inferior, por los fundamentos, entre otros, de que los honorarios de abogado envuelve el ejercicio de una discreción judicial que debe ser evidenciada por una conclusión expresa del grado de culpa imputado a una parte. El juez sentenciador, sin embargo, no consideró ninguna de estas cuestiones, sino que enmendó la sentencia original, que había sido preparada y sometida por los abogados del demandante, excluyendo expresamente los honorarios de abogado de la concesión de costas tal como fué hecha originalmente. Los apelantes no pusieron en duda la. autoridad del juez sentenciador para hacer esta enmienda, sino que insistie-

ron en que, dentro de las circunstancias de ese caso particular, la acción querellada equivalía a un abuso de discreción.   Esta corte, por lo tanto, no creyó necesario en aquel entonces discutir cuestiones que no habían sido levantadas en el alegato.   Se asumió para los fines de aquella opinión que si la corte inferior, como cuestión de hecho, nunca había tenido la intención de incluir honorarios de abogado en la concesión de costas, entonces tenía autoridad para corregir su sentencia para hacer que la misma dijera la verdad sobre este extremo.   Y en relación a esto se indicó que la sentencia original había sido preparada y sometida por los abogados para que el juez sentenciador la firmara. Pero aún si esta corte hubiese resuelto en el caso de *Guardiola* que una sentencia que intencionalmente incluye honorarios de abogado en la concesión de costas puede ser enmendada posteriormente, después de presentarse un memorándum, eliminando la partida de honorarios de abogado del mismo, sin embargo, no se desprende de ello necesariamente que no se hubiera ejercido discreción alguna al tiempo de la concesión original.

Ni tampoco esta corte resolvió en los casos de *Castro* v. *Societé Anonyme des Sucreries* y *López Ramírez* v. *Benítez, supra,* como sostienen ahora los abogados de los demandantes-apelantes, que la corte de distrito, al considerar un memorándum de costas, está en libertad de reconsiderar la concesión original y eliminar de la misma el elemento de honorarios de abogado, o enmendar o modificar en alguna otra forma tal sentencia original.   Los puntos de vista expresados por esta corte en las opiniones emitidas en los dos casos últimamente mencionados pueden ser erróneos, pero el significado es perfectamente claro si se considera el lenguaje usado a la luz de las disposiciones estatutorias existentes, las cuales es el deber de esta corte interpretar de acuerdo con ciertos y determinados principios establecidos, incluyendo la regla sentada en Bacon's Abridgement que fué citada con aprobación por la Corte Suprema de los Es-

tados Unidos en el caso de *Washington Market Co.* v. *Hoffman, supra.*

La sexta contención de los demandantes-apelantes es que la corte inferior erró al no resolver que carecía de jurisdicción para ejercer la discreción que no ejerció el juez sentenciador. Esta proposición parte de la hipótesis de que los honorarios de abogado deben ser concedidos específicamente en la sentencia original, y envuelve como corolario la idea de que, en ausencia de tal concesión original específica, la misma no puede hacerse al tiempo de aprobarse un memorándum. Por las razones ya expuestas, no estamos preparados por ahora para aceptar tal premisa, y, por tanto, no necesitamos poner en duda la corrección de cualquier conclusión que pueda inferirse de la misma.

El séptimo señalamiento es al efecto de que la corte inferior abusó de su discreción al no excluir por completo la partida de honorarios de abogado al tiempo de considerar el memorándum de costas, por no existir culpa o temeridad de parte de los demandantes de un grado tal que fuese suficiente para justificar la inclusión de tales honorarios en la concesión de costas. Aquí la argumentación es substancialmente una repetición de lo que se dijo en apoyo de una moción solicitando una nueva vista que ha sido declarada sin lugar por este tribunal. La contención tendría mucho peso si la cuestión hubiese sido levantada en la corte inferior por medio de una moción solicitando una nueva vista respecto a las costas, o, de otro modo, al tiempo de la sentencia original. La sugestión de que la ley exige una conclusión expresa en cuanto a la existencia de algún grado de temeridad o culpa, extremo en el cual los letrados de los demandantes-apelantes hacen gran hincapié, parecería envolver en primer término una revisión y una reconsideración de una larga línea de decisiones empezando con la de *Paganacci* v. *Lebrón,* 24 D.P.R. 796, en la cual disintió el juez que suscribe, aparte de la legislación más reciente que puede o no tener alguna relación con la cuestión

allí discutida y resuelta. Pero, sea ello como fuere, en el presente caso ni siquiera se solicitó conclusión alguna de tal índole en la corte inferior. Hasta ahora esta corte ha resuelto uniformemente que una cuestión en cuanto a un error cometido por una corte de distrito en la concesión original de costas surge demasiado tarde cuando se levanta por primera vez en la apelación de una resolución dictada con respecto a un memorándum de costas, y en el presente caso esta corte no sólo ha confirmado la sentencia original incluyendo el pronunciamiento de costas, sino que también ha denegado una moción solicitando una nueva vista sobre tal cuestión. No podemos asumir, como lo hacen los abogados de los demandantes-apelantes, que el juez de distrito que aprobó el memorándum de costas en este caso tuviera poder para enmendar o modificar la concesión tal como fué hecha por el juez que presidió el acto del juicio. Por tanto, no necesitamos extendernos sobre cualquier inconsistencia entre tal asunción y la actitud asumida por los abogados al argumentar el señalamiento de error anterior, ni discutir los méritos de una proposición que envuelve un alegado abuso de discreción cuya existencia no ha sido demostrada ni se ha demostrado que fuera ejercida por la corte inferior.

Otra contención de los demandantes-apelantes es que la corte inferior erró al no resolver que, si la discreción ejercida por un juez de distrito no se basa abierta y expresamente en hechos probados y razonablemente expuestos, y si la concesión no se hace de acuerdo con las circunstancias así determinadas, entonces la ley resulta caprichosa y, por tanto, anticonstitucional, por imponerle un castigo al ciudadano al ejercer su derecho de acudir a los tribunales, negándole así el debido procedimiento de ley. La argumentación sobre este punto, sin embargo, vuelve a discutir lo adecuado, si no la necesidad, de conclusiones de hecho como base para la concesión original de costas. La cuestión constitucional no ha sido en absoluto discutida en el alegato, y, a falta de cualquier cita de autoridades en cuanto a la nece-

sidad de una conclusión, y con el fin de sugerir un punto de partida para una investigación posterior en cuanto a este extremo, nos conformamos con hacer constar de paso la manifestación de que:

"La regla general en pleitos en equidad así como en acciones en ley es que la parte victoriosa tiene derecho a las costas, y será aplicada a menos que la parte que pierde pueda demostrar que la equidad exige un criterio distinto." 15 C. J. 35, párrafo 23.

Véase además 7 R.C.L. 785–786, párrafo 5.

En conclusión, los demandantes-apelantes insisten en que la corte inferior erró al conceder $1,500 como honorarios de abogado, porque tal cantidad es excesiva como compensación por los servicios prestados, y en todo caso el grado de culpa o temeridad que se le puede atribuir a los demandantes-apelantes no justifica la concesión de tal cantidad. Por las razones que ya hemos expresado, no podemos estar de acuerdo con el criterio de que la cantidad de mil quinientos dólares es excesiva desde el punto de vista de la compensación razonable por los servicios legales prestados por los letrados. Pero, por las razones que asimismo hemos expuesto anteriormente, nos sentimos obligados a resolver que la suma de $500 estaría más en proporción con tal grado de imprudencia o temeridad que pudiera imputarse a los demandantes en este caso, o que les fué imputado aparentemente por la corte inferior.

*La resolución apelada debe ser modificada de conformidad, y confirmarse así modificada.*

OPINIÓN PERSONAL DEL JUEZ ASOCIADO SR. WOLF.

Los artículos 327 y 339 del Código de Enjuiciamiento Civil, según fueron finalmente enmendados en 1917, han sido copiados *verbatim* en nuestra opinión en el caso de *Ramírez* v. *American Railroad Company*, 28 D.P.R. 181. Al leer de nuevo ahora estos dos artículos no tengo duda alguna de que fué la intención de la Legislatura conceder a un litigante victorioso el derecho a los honorarios de abo-

gado cuando en la sentencia se le han concedido las costas. Al dictarse la decisión en el caso de Ramírez probablemente nos hallábamos ante una situación un poco difícil por el conflicto existente entre los casos de *Veve v. El Municipio de Fajardo,* 18 D.P.R. 764, y *Brac v. Ojeda,* 27 D.P.R. 658, pero ahora estoy más seguro en mi punto de vista. Las primeras palabras del artículo 327 establecen el derecho a las costas y gastos y no mencionan honorarios de abogado. Como posteriormente se mencionan honorarios de abogado, la palabra "costas" en tal artículo es la única que incluiría honorarios de abogado.

El párrafo que le sigue disipa toda duda. "Cuando en una acción o procedimiento ante una corte de distrito se han concedido las costas a una parte, ésta tiene derecho, a discreción de la corte de distrito, a recibir de la parte que ha sido vencida una cantidad que representa el valor de los servicios de su abogado, o parte de tal cantidad." Por tanto, los honorarios de abogado, forman parte de la definición de la palabra costas o son la consecuencia inevitable de tal imposición. El hecho de que el último disponiéndose del artículo 327 mencione "honorarios y costas" separadamente no deroga la intención de la Legislatura previamente expresada. En aquel entonces la mente legislativa estaba ocupada en el cálculo, método u ocasión en que debían imponerse las costas u honorarios.

Quedando sentado lo anterior, es evidente que cuando la corte de distrito ha condenado al pago de costas en la sentencia, el único momento para revisar ésta parte de la sentencia es en la apelación directa de la sentencia misma. En el presente caso en la sentencia se condenaba al pago de costas, se interpuso un recurso de apelación, se señaló un error a este respecto, y la sentencia fué confirmada en su totalidad, 36 D.P.R. 32. El derecho del demandado en el pleito original a percibir las costas y honorarios de abogado quedó determinado y es *res adjudicata* y ley en este caso. Podríamos revisar esta cuestión en el presente re-

curso de apelación únicamente si estuviésemos convencidos de que en una sentencia se deben conceder "honorarios" específicamente y estuviésemos dispuestos a revocar nuestra jurisprudencia anterior y a retroceder a lo que hemos considerado la interpretación errónea al artículo 327 en el caso de *Veve* v. *El Municipio de Fajardo, supra.* Quizá aún podría decirse, según se indicó algo en el caso de *Ramírez* v. *American Railroad Company, supra,* que ocho o nueve años de práctica constante desde que se dictó la decisión en *Brac* v. *Ojeda, supra,* han hecho aplicable la regla de *stare decisis.* La determinación de la cantidad a conceder es una cuestión enteramente distinta.

Estoy enteramente dispuesto a convenir con los demandantes y apelantes que el montante de los honorarios de abogado a conceder es el grado de culpabilidad que se puede imputar a la parte vencida en juicio y no la cantidad razonable de los honorarios de abogado. El estatuto y su historia anterior según ha sido reseñada en un memorándum contemporáneo del Juez Asociado Sr. Hutchison hace que no tenga duda alguna a este respecto.

Refiriéndonos a la cuestión de la cuantía concedida, no veo que fuera excesiva. En primer lugar, al leer la opinión de esta corte veo que resolvimos, en efecto, que la temeridad de los demandantes había sido grande. La corte de distrito había resuelto que las alegaciones de la demanda no fueron probadas. En un caso basado en fraude sería, por lo general, improcedente para una corte decir que el demandado no había sido culpable de fraude. Todo lo que un juez cuidadoso diría es que las alegaciones de la demanda no han sido probadas. Debe recordarse que el demandado originalmente no presentó prueba sino que descansó en el hecho de que los demandantes no habían probado su caso. El dejar de probar el caso es un hecho muy significativo. Los demandantes sabían o debieron haber sabido la clase y la cantidad de prueba que debían presentar. No obstante, fueron a la corte y dejaron de presentar un caso *prima facie.*

Esta corte dijo: "No tenemos dudas que el dolo o fraude puede establecerse por prueba circunstancial, pero en ningún caso su existencia puede quedar establecida por simples conclusiones, conjeturas o sospechas." Habíamos revisado el caso en su totalidad y demostramos que los demandantes dejaron de probar las alegaciones de la demanda. De suerte que al ser devuelto el caso a la corte de distrito, existía implícitamente en nuestra decisión la conclusión o resolución de que los demandantes habían sido culpables de bastante temeridad.

La imputación de fraude es en verdad una imputación muy seria. La persona que hace tal imputación debe estar preparada para probarla o de lo contrario es culpable de temeridad. El caso tal vez no sería tan fuerte si el demandado hubiese presentado prueba y la corte la hubiese creído. En el presente caso ni aún hubo conflicto de prueba y el demandado se vió obligado a tener que emplear los servicios de un abogado y a contestar la demanda, la que no podía, según sucedió, probarse. Además, el análisis de la prueba hecho por esta corte, entre otras cosas, demostró que las condiciones existentes en las compañías envueltas en el litigio se debía en gran parte a la inmensa baja sufrida en los precios del azúcar en 1920 y 1921, y los demandantes tenían tanto derecho a tener conocimiento de esa baja como cualquiera otra persona.

Respecto a la apelación del demandado tengo, por tanto, cierta simpatía y creo que el montante de honorarios de abogado concedido fué probablemente bajo. Sin embargo, ésta es una cuestión que cae dentro de la sana discreción de la corte de distrito y no estoy preparado para decir que que hubo un abuso de tal discreción.

El demandado-apelante también insiste en que esta corte tiene derecho a conceder honorarios por los servicios prestados ante ella. Los artículos 327 y 339, después de todo, forman parte del Código de Enjuiciamiento Civil y están incluidos en el capítulo que trata de "costas." Para mi

concepto es imposible leer ese capítulo sin llegar a la conclusión de que la Legislatura tuvo en mente al discutir la
cuestión de honorarios de abogado, las costas en la corte
inferior. No se ha tratado de modificar el artículo 333 de
dicho código, que se refiere a las costas en apelación. Para
que una parte tenga derecho a los honorarios de abogado
en apelación, debe aparecer claramente la intención de la
Legislatura.

Los otros señalamientos de error o han sido discutidos
en la opinión del Juez Asociado Sr. Hutchison, o lo han
sido en ésta o no afectan seriamente el resultado. Por
tanto, ni en uno ni en otro caso veo razón alguna para no
dejar en pie la resolución de la corte inferior.

### OPINIÓN EMITIDA POR EL JUEZ ASOCIADO SR. ALDREY.

Estoy conforme con la opinión escrita en este caso por
el Juez Asociado Sr. Wolf en que los honorarios de abogado forman parte de la condena en costas impuesta en
una sentencia; en que el único momento para revisar esa
parte de la sentencia es en apelación directa contra la sentencia misma; y en que el derecho del demandado a percibir
las costas y honorarios de abogado quedó completamente
determinado y es *res adjudicata* en este caso. Como él
dice, la determinación de la cantidad a conceder es una
cuestión enteramente distinta; pero discrepo de él y de los
otros jueces que intervienen en la resolución de este caso
en que el montante de los honorarios de abogado a conceder depende del grado de culpabilidad que se pueda imputar a la parte vencida en el juicio y que no consiste en la
cantidad razonable de los honorarios de abogado.

En la opinión disidente que escribió el Juez Sr. Franco
en el caso de *Castro* v. *Societé Anonyme des Sucreries,* 34
D.P.R. 582, con la cual estuve conforme, quedó fijado su criterio y el mío sobre esta cuestión pues dijimos que: "Al
dictarse sentencia es que se determina la condena de costas y entendemos que éste es el solo momento en que las

mismas son concedidas en todo, en parte o rehusando con-
cederlas, teniendo en cuenta el juez inferior en su discre-
ción la temeridad o el grado de culpa o completa exención
de la parte vencida.'' . . . . Y que, ''la cuestión de teme-
ridad o grado de culpa deja de tener ningún peso o valor
para discutir y apreciar la cuantía de las costas en el pro-
cedimiento que para fijarlas ha prescrito la ley por sepa-
rado.'' Y agregamos entonces:

''Si se adoptase tal criterio en sentido 'de considerar de nuevo
la mayor o menor temeridad de la parte vencida a los efectos de
graduar la cuantía de honorarios,' podría a cada momento darse el
caso que confirmada en una apelación una sentencia que dió por
bien impuestas las costas en razón a la temeridad de la parte ven-
cida, o consentida la sentencia en dicho extremo, se suscitara nue-
vamente la misma cuestión ya juzgada al decidir sobre la impug-
nación al memorándum de costas. Debemos insistir, por consi-
guiente, diciendo que la cuestión de si una parte ha de pagar las
costas por haber sido declarada su temeridad en el pleito queda de-
cidida definitivamente por la sentencia o por la apelación en ese
particular y que solamente en el memorándum se determina la cuan-
tía o montante de lo que tiene que pagar dicha parte según el valor
o importancia de los servicios del abogado y no fijar tal valor o im-
portancia por el grado de temeridad que tuviera en su acción o
defensa.''

Así pues, de acuerdo con el artículo 327 del Código de
Enjuiciamiento Civil como fué enmendado en 1917, al dic-
tarse la sentencia resolviendo el pleito es que se ha de
apreciar la culpa o temeridad de los litigantes para impo-
nerles o no las costas o una parte de ellas; y resuelta de-
finitivamente esta cuestión por falta de apelación o por con-
firmación de la sentencia, la temeridad o culpa del litigante
a quien se han impuesto las costas o parte de ellas es cues-
tión resuelta ya entre las partes y sólo queda después de
esto la determinación o fijación por el procedimiento del
artículo 339 enmendado del mismo código del importe o
montante de las costas y del valor razonable de los hono-
rarios de abogado, sin que en esta ocasión haya que volver

a considerar el grado de culpa o temeridad de la parte condenada en costas mediante un nuevo estudio y consideración de los méritos del caso, por ser esta cuestión ya resuelta definitivamente por la sentencia.

Por lo expuesto, entiendo que no son sostenibles los errores alegados por los demandantes contra la resolución fijando la cuantía de los honorarios de abogado de la parte victoriosa en $1,500.

Con respecto a la apelación del demandado alegando error porque se fijan los honorarios de su abogado en dicha cantidad y no en $5,000 como solicitó en su memorándum de costas, entiendo que la cantidad que ha concedido la corte inferior es el valor razonable de dichos servicios teniendo en cuenta la naturaleza del asunto y los servicios prestados, sin que el hecho de haber pagado el demandado a su abogado mayor cantidad que la concedida ni haber declarado dos abogados que $5,000 es el valor razonable de tales servicios obligue a la corte a conceder la cantidad reclamada. Además, el justiprecio del valor de dichos servicios es cuestión discrecional de la corte inferior, como dice el Sr. Wolf en su opinión en este caso, y no encuentro un abuso manifiesto del ejercicio de esa facultad.

Por lo expuesto, opino que la corte inferior no cometió los errores alegados por el demandado y por los demandantes y que *la resolución apelada debe ser confirmada.*